Good morning, everyone. We have six cases on this morning's argument calendar. And we'll begin with appeal number 23-1691, Robert Hague v. The Chicago Board of Education. Mr. Herbert, nice to see you. Good morning. May it please the court. My name is Dan Herbert, and I represent the plaintiff in this case, Robert Hague. Respectfully, I would ask for three minutes of rebuttal time. We come here today because the district court granted summary judgment on all counts against the plaintiff. In this case, we have raised a number of examples of how there is a question of fact which should preclude summary judgment. We raised issues about how the court, district court, ignored vital, undisputed pieces of evidence that we provided in the summary judgment. We raised issues about how the court failed to grant inferences in favor of the plaintiff, the non-moving party. And we pointed out errors by the court where they misinterpreted significant pieces of evidence, namely the situation where the court wrongly determined that there was no pretext in the termination because it was significant that Davis did not speak with the complaining witness, Ms. Nieder, before she filed her complaint. The opposite of that is true. But the issue, the sole issue for this court, I believe, is whether or not there was a discriminatory intent behind the defendant's decision making. Can I ask you a question? With this coming to us in the summary judgment posture like this, the particulars of the summary judgment record and the evidence at a higher level of specificity gets important. There's a document in the record that you all are familiar with. I want to ask Ms. Masters the same question. It's this document that is entitled Employee Disciplinary Actions. You all recognize it. I do. Yeah. In that document, it looks to me, so my question is, there's a box there for the substantiated charges. And there's a whole bunch of boxes that are checked or filled in or there's a pull down menu or something. Absenteeism, discourteous treatment, et cetera, et cetera. My question is this. What does this summary judgment record show with respect to the development of evidence and, in particular, testimony about this document? The testimony, there was one witness that that document was discovered later in discovery. But there was testimony by one witness that she did not see this document before. Who was that? That was Ms. DeRuntz, who was Davis's supervisor. And she's not included on that. Oh, that's interesting, because I thought DeRuntz may have, her name's Mary DeRuntz, right? Yes. Yeah, I thought she may have prepared it. And the reason I, I mean, I don't know. I mean, you all are going to know about it. The reason I say that is because there's a box that says manager ID, Mary DeRuntz, and she's the only name on here. Judge, I think it was unclear if she prepared it or not. I know that it was certainly, it was in his personnel file, Judge. Right. So the reason I'm asking about the question is it looks to me, correct me, it looks to me that Christina Jordan in the HR department was the one who made the termination decision, either exclusively or largely, based upon the derogatory comment that your client was overheard making about his immediate supervisor, Ms. Davis, OK? And so I thought when I saw this document in the briefing, well, maybe that you have something to work with, because this suggests more than a derogatory comment. But that possibility is entirely dependent upon what the summary judgment record shows about this at a high level of specificity. Mr. Herbert, let me jump in there, because Ms. DeRuntz, in her deposition, she said she had not seen a form like this before, that she didn't prepare it and she hadn't seen it. Is your recollection of the record different, because that's directly responsive to what Judge Scudder is asking about? I think, respectfully, she said that she doesn't remember seeing that particular document, but not that. She was asked if she's ever seen a form like this one, and she said no. I believe that you are correct, Your Honor, but I would say to that point, this document is, there's really no dispute that this document was prepared by the defendants, in this case. As far as who actually filled it out, I think that there is some uncertainty there. But there's no question, and it's undisputed, that this document was prepared by the defendants, and it was. Yeah, the problem you have, I mean, I agree to the extent that nobody's arguing it's fabricated or anything. Yeah, I think that's fair. But the difficulty that you have is the remainder of the summary judgment record, at least as I've seen it, seems to indicate pretty strongly that Ms. Jordan made the termination decision, maybe it was approved by Ms. Durrance, based upon the derogatory comment. And so, I mean, that's very, very clear in the record. Yes, I think that it was made by Ms. Jordan and Ms. Ernesti, who was the lawyer that was involved in this case. And Ms. Durrance, she really didn't play that big of a role in the termination, and that's pretty clear in the record. The termination was brought about by the Department of Human Resources and the attorney that was working for the board. Ms. Durrance was somewhat irrelevant to the termination process. Did Mr. Haig ever believe that he was going to be terminated at any point before the report by Ms. Nieder of this comment? Oh, he believed it from as soon as he returned from his FMLA leave, everything changed with respect to his work. So yes, he clearly believed that they were either creating a paper trail for him, or were just going to fire him. And the acts, those are indisputable as well. And I would say to that document, that is the critical document that not only creates. I'm sorry, we need to jump, because I know you wanted to say three minutes for rebuttal. Can you tell me, are you still bringing an FMLA interference claim? Yes. And what's the basis if Mr. Haig utilized all of his FMLA leave that he was entitled to? He was discriminated against for using his FMLA time. Yes, he was eventually granted all of his FMLA time, but that was after they had already discriminated against him with respect to his ergonomic workstation, with respect to his docking him pay for using his FMLA time, which is against the policies. So that document alone proves, without any question, that my client was fired because of his disability. And if that fact is true. On this document? Yes, I believe so, Judge. Because it shows that there's five bases there for why he was terminated. And it's discourteous treatment, absenteeism, fraud related to records, fraud related to benefits, noncompliance with benefits. There's no question that at least the last four of those are related to his FMLA leave. What's the evidence of that? That's your argument. I understand why you're making it, but what in the summary judgment record could you point us to that confirms that? I'm sorry, Judge. That confirms that. Yeah, in other words, the discourteous treatment, we know what that relates to. OK, the last. I would suggest that we don't know what it relates to. How can we not know what that relates to, but we know what the next four relate to? Because I think they're all related, quite frankly. But even if you were to take the discourteous treatment as the alleged comments made, it's still, I mean, there's no dispute. The difficulty that I have is what we ordinarily see is with respect to a document that may have importance like this, that you would say, oh, the following two or three witnesses were vigorously questioned about the document. So in the deposition transcripts, we have a record that's developed, and then we can review that record to figure out whether there's a trial issue or not. That's what we're missing here. I understand, Judge. I understand your point. And I would say that we obtained this document after many of the witnesses had already been deposed. Sure. Did you say, look, this may be a game changer. I need to reopen the depositions. I did not ask that, Judge, because I believe that the foundation was laid for that. The court could certainly take judicial notice of that. The defendants even admitted that it was an authentic document. They relied on it. There's no dispute about that. You don't read that document as saying the only ground for which the discipline of termination was imposed was discourteous treatment. Yes, I do not read the document to say that. And I would say to that point that discourteous treatment, that could be related to his disability as well as far as the animosity that he had towards Ms. Davis. This discourteous treatment, that's how they described that. And after the fact, when they argued summary judgment, they talked about this comment that was allegedly made by my client as being utterly egregious, subject to sexual harassment in the workplace, subject to violence in the workplace. But how did they describe it in the termination paper? Discourteous treatment. That's why I say that that point, I think that all five points speak to his protected status. OK, we'll give you a couple minutes on rebuttal. Thank you very much. Yeah, you're quite welcome. Ms. Masters, good morning. Good morning, and may it please the court. Good morning. There is no citations to the ADA. There's no citations to the FMLA in the appellant's brief. I want to just, we could clearly state, what is your position, the board's position, as to what has not been waived? Your Honor, there's citations to the ADA in our brief at the beginning. Not your brief. Oh, oh, I'm sorry. I apologize, Your Honor. I believe the board's position is that Mr. Haig has waived all of his arguments on the merits substantively by failing to cite to relevant case law for any of his arguments, and that this court can affirm for that reason alone. He just has not properly contested any of the bases that were raised and that were the basis of the ruling by the district court by failing to cite to relevant case law, and that's this court's rule, Federal Appellate Procedure 28. So I mean, frankly, we could stop there, and we can sit down and stand on the briefs if the court has no other questions. Well, can you help us with this document? Sure. So I mean, I have a lot. You heard some of my questions, but I mean, I've looked at it four or five times. I have questions. Who prepared it? Is this the record of termination? Who testified about it, et cetera? OK, so Your Honor, I'm happy to address those. I'd like to make the point to the court that Mr. Haig did not depose a single one of the decision makers in this case on any of his claims. Ms. Jordan and Ms. Ernesti were responsible for making the decision to terminate. They weren't deposed. The decision makers on FMLA leave questions was Ms. Frank. She was not deposed. Was who? Say that again. Ms. Frank. Frank, OK. Is the person who handles FMLA questions. She was not deposed. And Ms. Bentley is the person who hires ADA accommodation requests. She was not deposed either. So none of them were deposed. And so he is just speculating as to that form, which specifically says the only reason that he was terminated was for his very egregious gender-based comments. And as for that, I would also like to point out to the court that he agreed, it is uncontested, that the decision makers, the board, had an honestly held belief that he made those comments. And that eliminates the pretext argument. Certainly, he needed to come in with something to contest that. And he has not done that. So he really just, and I think at this point, he also admits that Mary Durant, who was asked about that document, said she had no knowledge of it. She was not a decision maker. It is uncontested as well. There's no evidence that Ms. Durant played a role in the termination. There's no evidence that Ms. Davis played any role in the termination. It was a decision by Ms. Jordan and Ms. Ernesti. There's also no evidence that the board didn't follow. It's any type of- So we really don't even have any evidence as to who prepared the document. That is correct. We can read a name on it, but it doesn't say prepared by. It says manager ID. Right. The board, as the court noted, we're not contesting. It came from our files. But it doesn't establish pretext on anything. It doesn't establish discriminatory motive. And that is particularly true when it's already been conceded that the board hadn't honestly held belief that these comments were made. I'd also point out that it was Mr. Haig's own undisputed fact that he had a good relationship with Ms. Nider, who's the person who made the complaint. But the report by Ms. Nider was uncorroborated. It was Ms. Nider's report of what she heard. So it seems to me it's fair to say he was terminated on the basis of an uncorroborated report. At least, that's the board's position. This report is what terminated him. Are uncorroborated reports enough to trigger termination? So two points about that, Your Honor. The first is, again, it's not contested that the board hadn't honestly held belief that this was true and that there's testimony that Ms. Nider was interviewed about it. And the other point I'd make about that is that, again, is a failure of evidence on the plaintiff's part, because there was no discovery conducted about the termination process, about the investigative process. Again, when you don't interview the decision makers, when you don't depose them, and you don't otherwise elicit documents about what the normal process is, his evidence of pretext or normal process points to documents that don't apply to at-will employees. He's citing, as we cite, to the documents in the record that do apply to him as an at-will employee. You cite, too, for example, the employee guidelines, right? The employee guidelines manual? Well, that raises another question. And I'm certain it's important to Mr. Haig, whether it's really apparent or not. But the employee guidelines talk about progressive discipline. And of course, it says it's not required in every case. And it talks about discipline meetings. So it talks about a lot of process. And it doesn't appear that Mr. Haig got any. Your Honor, and that is his burden, though, to show a genuine disputed issue of material fact, that we didn't apply the policy to him in a way that would have been applied to any type of comparators. He says he has comparators. But as the district court pointed out, he didn't. He didn't conduct any discovery on it. That, too, is a waiver. He really did have an obligation here to come up with some amount of evidence showing there was a genuinely disputed issue of material fact. And he did not do that. We also, just to pivot for a moment, would point out that he hasn't shown that he is a person who was qualified under the ADA. And his FMLA interference and FMLA leave claims were not briefed. They are certainly in his opening brief. They were all intermingled without any relevant case law. And in some, we just say that he failed to create an issue to show that the district court made any errors of law by his citation failures. His failures continued into the reply brief as well as did his misrepresentations of the record, which are pretty extreme. And for all of those reasons, if the court has no other questions, we'd ask that the judgment be affirmed. Thank you. Ms. Masters, thanks to you. Mr. Herbert, we'll give you those couple minutes promised. Judge, with respect to the argument about how we didn't distinguish between the ADA and the FMLA, they're all intermingled. There was discriminatory acts. And they were all based upon what we allege to be this animus towards my claim. The argument, though, more clearly is that you failed to comply with Appellate Procedure Rule 28. How do you address that argument? With respect to the statement of facts, that issue, the statement of facts, they were contained within the argument which this court has held to be proper. No citations to the ADA. No citations to the FMLA. No case law that supports your argument. That's what they're presenting. Judge, I would argue that we did cite to the proper cases. We cited to the ADA. We cited to the FMLA. We cited to retaliation. We cited to facts that established that. The fact that we didn't distinguish between ADA and FMLA is based upon the fact that they're all intermingled. They're all contingent on that same point. That document that we spoke of, Judge, first of all, we did interview somebody that was involved in the decision making. Counsel stated that Ms. Davis played no role in the termination process. That's false. We have a testimony. When you say interview, you mean deposed under oath? Yes, Ms. Davis. OK, she's the one. She's the supervisor, though. She's the supervisor, yes. The one about whom the comment was made. Yeah, yes. And there is evidence that that individual, Ms. Davis, was involved in the termination process. That came from Ms. DeRuntz. And I know I've cited to it in the record. And that's a critical point, because this is the person that was the subject of these complaints. With respect to the argument that we somehow waived, we waived the issue about the honesty of Ms. Nieder's complaint. It's a misunderstanding, and it's a misinterpretation. Mr. Haig's testimony was that, yes, if she made these comments, the board must have believed her 100%. He is denied making these comments the entire time. In that document. OK, go ahead and make a final point. Yes, that document that was produced, Judge, I would just say that that document should have been produced in discovery. It wasn't until we sent, I'm not sure if it was a FOIA or a subsequent request, and we got that late in the game. And I would say that we shouldn't be prejudiced based upon that fact. Thank you very much. Mr. Herbert, thanks to you. Ms. Masters, again, thanks to you. We'll take the appeal under advisement. We'll move to our second.